[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13578

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 12, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-60130-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY N. PARKER,
ROBERT W. PARKER,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(December 12, 2008)**

Before DUBINA, BLACK and FAY, Circuit Judges.

PER CURIAM:

Gary Parker (Gary) appeals his 240-month sentence imposed following his conviction for numerous counts of wire and mail fraud, conspiracy to commit wire and mail fraud, conspiring to launder money, money laundering, and conspiracy to evade income taxes. His co-defendant, Robert Parker (Robert) appeals his 135-month sentence imposed after his conviction for numerous counts of wire and mail fraud, conspiracy to commit wire and mail fraud, conspiring to launder money, money laundering, conspiracy to evade income taxes, and tax evasion. After carefully considering the briefs, reviewing the record on appeal, and having the benefit of oral argument, we affirm Gary's and Robert's convictions and sentences.

I. SUFFICIENCY OF THE EVIDENCE

Gary and Robert both assert the Government failed to prove any scheme to defraud for any of the conspiracy and fraud offenses because there was no proof at trial that misrepresentations were made to any customer. Gary also challenges his conviction for conspiracy to evade income taxes. "We review the sufficiency of the evidence *de novo* and view the evidence in the light most favorable to the government with all reasonable inferences and credibility choices made in favor of the government to determine whether a reasonable jury could convict." *United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008).

Conspiracy convictions require: "(1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). To prove the unlawful objective, namely mail or wire fraud, the government must show the defendant (1) intentionally participated in a scheme to defraud and (2) used the mails or interstate wires to execute the fraudulent scheme. *United States v. Suba*, 132 F.3d 662, 673 (11th Cir. 1998) (mails); *Hasson*, 333 F.3d at 1270 (wires). Because guilty knowledge can rarely be established by direct evidence, especially with fraud crimes which, by their very nature, often yield little in the way of direct proof, "circumstantial evidence of criminal intent can suffice." *Suba*, 132 F.3d at 673. To establish money laundering, the government must prove: "(1) the defendant conducted or attempted to conduct a financial transaction; (2) the defendant knew the property involved in the transaction represented the proceeds of unlawful activity; (3) the property involved was in fact the proceeds of the specified unlawful activity; and (4) the defendant conducted the financial transaction 'with the intent to promote the carrying on of [the] specified unlawful activity.'" *United States v. Carcione*, 272 F.3d 1297, 1302 (11th Cir. 2001) (quoting 18 U.S.C. § 1956(a)(1)(A)(i)).

3

A reasonable trier of fact could have found beyond a reasonable doubt Robert participated in a scheme to defraud based on victim testimony, insider testimony, and physical evidence. Similarly, the testimony and physical evidence presented at trial were sufficient to convince a reasonable jury of Gary's participation in the scheme to defraud. At a minimum, the volume of telephone calls and facsimile transmissions between Gary and Robert, the testimony from an insider, the flow of money from and between Robert, Gary, and Parker Leasing and Financial Service (Parker Leasing), Gary's and Robert's failure to file tax returns from 2000 through 2004, the absence of business records at Parker Leasing, and the lack of records at Parker Leasing evidencing a single funded deal would be sufficient to persuade a reasonable jury of the Defendants' participation in a scheme to defraud.

There was sufficient evidence at trial for a rational trier of fact to establish a *Klein* conspiracy. "To be sufficient [to establish a *Klein* conspiracy], the evidence must establish an *agreement* among the conspirators with the intent to 'obstruct the government's knowledge and collection of revenue due.'" *United States v. Adkinson*, 158 F.3d 1147, 1154 (11th Cir. 1998) (emphasis in original). The evidence at trial showed checks were mailed from Parker Leasing in Fort Lauderdale and deposited by Gary in two different banks in Tennessee. These

4

checks were often written for amounts under the $10,000 threshold reporting requirement for currency transaction reports. Gary would also deposit a check, receive some cash, and deposit that portion in another bank. The evidence also showed within a few days of victims' wires and checks being deposited in Parker Leasing's accounts, a check or cashier's check in the amount of $10,000 or $25,000 would be deposited in Gary's Tennessee bank account. This activity, coupled with the telephone records and the lack of business records at Parker Leasing evidencing any normal business being conducted, would be sufficient to establish the existence of a *Klein* conspiracy beyond a reasonable doubt.

## II. CONSTITUTIONALITY OF SENTENCING ENHANCEMENTS

Gary and Robert both argue their sentences were imposed in violation of the Sixth Amendment. They contend the Supreme Court held in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000) and *United States v. Booker*, 125 S. Ct. 738 (2005), a fact that increases a defendant's sentence must be admitted by the defendant or proven to the jury. They argue in *Rita v. United States*, 127 S. Ct. 2456 (2007), the Supreme Court stated Sixth Amendment issues remain regarding the imposition of enhancements not submitted to the jury. They contend the judge, not the jury, determined Gary and Robert deserved enhancements for the number of victims, the employment of sophisticated means, and a leadership role, and these findings

5

violated the Sixth Amendment because they were not found by the jury beyond a reasonable doubt.

We review a constitutional challenge to a sentence *de novo*. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). The Supreme Court in *Booker* held sentencing enhancements based solely on judicial fact-finding pursuant to the mandatory guidelines violated the Sixth Amendment. *See Booker*, 125 S. Ct. at 748-51. However, the Court cured the problem by excising 18 U.S.C. §§ 3553(b)(1) and 3742(e), thereby making the Federal Sentencing Guidelines advisory only. *Id.* at 764. As such, the only way a post-*Booker* sentencing court can violate a defendant's Sixth Amendment right to trial is by incorrectly applying the guidelines as mandatory. *See United States v. Shelton*, 400 F.3d 1325, 1331 (11th Cir. 2005). We have observed, after *Booker*, "the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional." *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005) (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005)). The court may, by a preponderance of the evidence, use judge-found facts in formulating a sentence, as long as it properly applies the advisory guidelines. *See id.* at 1324. In *Rita*, the Supreme Court stated its "Sixth Amendment cases do not automatically forbid a

sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence." *Rita*, 127 S. Ct. at 2465-66.

The district court properly applied the guidelines as advisory; thus, it did not violate the Sixth Amendment. This Court has previously rejected Gary's and Robert's argument the district court violated the Sixth Amendment by applying enhancements not found by the jury. Moreover, in *Rita*, the Supreme Court explicitly stated judicial fact finding by the sentencing court did not violate the Sixth Amendment. For these reasons, the district court did not violate the Sixth Amendment at sentencing by imposing sentencing enchantments based on judicial fact finding.

### III. IMPOSITION OF SENTENCING ENHANCEMENTS

Gary individually argues the district court erred in imposing various sentence enhancements. Specifically, he argues the court erred by applying a sophisticated means enhancement as there was nothing sophisticated or complex about the offense. He contends the offense was based on contracts that were no more complex than a typical lease agreement. Gary also argues the court erred in finding he was a leader of the enterprises based on the daily phone calls he received from Parker Leasing. He argues the government presented no evidence that he exercised any control of Parker Leasing.

We review the district court's factual findings regarding the use of sophisticated means for clear error. *United States v. Barakat*, 130 F.3d 1448, 1456 (11th Cir. 1997). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (internal citations and quotations omitted), *cert. denied*, 128 S. Ct. 1295 (2008). A two-level enhancement is appropriate under U.S.S.G. § 2B1.1(b)(9)(C) if "the offense otherwise involved sophisticated means . . . ." Application Note 8 defines "sophisticated means" as:

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1(b)(9)(C) cmt. n.8 (B).

We review a district court's decision to enhance a defendant's offense level due to his aggravating role under U.S.S.G. 3B1.1 only for clear error. *See United States v. Phillips*, 287 F.3d 1053, 1055 (11th Cir. 2002). A four-level increase is applied if the defendant "was an organizer or leader" in an offense with more than

8

five participants. U.S.S.G. § 3B1.1(a). In assessing a defendant's role in the offense, the factors the courts should consider include:

> [1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4. We have stated Section 3B1.1 requires the exercise of some control, influence, or leadership over the organization. *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993).

Unobjected-to facts in the PSI support the court's imposition of the sophisticated means enhancement. The Parkers' fraudulent scheme involved the application of advance fees clauses in leasing agreements. The victims included sophisticated businesses inside and outside the United States, including a soccer club in Austria, a movie theater chain in the United States, and a power company in India. Funds were moved between bank accounts in Florida and Tennessee. Victims were found through advertising in the nationally circulated *USA Today* newspaper. The Parkers hired a third party for inspections to give the deals an appearance of legitimacy. Gary's argument that the financial transactions were not sophisticated is contradicted by this record of complex business deals and the

9

systematic efforts to hide the fraudulent proceeds, and it was not clearly erroneous for the district court to find the Parker's employed sophisticated means.

Unobjected-to facts in the PSI also support the district court's finding that Gary played a leadership role in the operation. Phone records revealed Gary participated in daily phones calls with the Parker Leasing office. Gary managed a bank account in Tennessee that received $1 million from Parker Leasing, an amount equal to or greater than that received by his co-defendants. The district court could reasonably conclude the daily communications, coupled with the periodic transfer of funds from Parker Leasing totaling $1 million, evidenced Gary had an active role in managing the operation. Given this evidence, it was not clearly erroneous for the court to impose a leadership role enhancement.

For the foregoing reasons, Gary has failed to establish the court clearly erred in applying the sophisticated means and leadership role enhancements.

## IV.  REASONABLENESS OF ROBERT PARKER'S SENTENCE

Robert individually argues his top-of-the-guidelines-range sentence of 135 months was unreasonable. He contends his sentence was procedurally flawed as the court did not meaningfully consider the § 3553(a) factors or adequately explain the chosen sentence. He argues *Gall  v. United States*, 128 S. Ct. 586, 591 (2007), requires a more meaningful discussion of the statutory sentencing factors than a

10

simple statement that the court considered them. He contends there are numerous reasons to support a conclusion his sentence was unreasonable, including his history of depression, his extensive history of drug and alcohol abuse, his admitted responsibility for the crime, and his cooperation with the government. He also argues he had personal characteristics that warrant a lesser sentence, including poor health and an abusive father.

We review a final sentence for reasonableness in the light of the 18 U.S.C. § 3553(a) factors. *United States v. Winingear*, 422 F.3d 1241, 1244-46 (11th Cir. 2005). The Supreme Court clarified that courts of appeal, when reviewing for reasonableness, are to apply the deferential abuse-of-discretion standard. *Gall*, 128 S. Ct. at 591. After we conclude the district court made no procedural errors, we "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* at 597; *see also United States v. Hunt*, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006) ("After *Booker*, a sentence may be reviewed for procedural or substantive reasonableness").

The Supreme Court has suggested review for substantive reasonableness under the abuse-of-discretion standard involves inquiring whether the factors in 18 U.S.C. § 3553(a) support the sentence in question. *Gall*, 128 S. Ct at 600. "[T]he party who challenges the sentence bears the burden of establishing that the

11

sentence is unreasonable in light of both [the] record and the factors in section 3553(a)." *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). The district court need not state on the record that it has explicitly considered each factor and need not discuss each factor. *Id.* at 786.  Rather, "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under *Booker*." *Id.*  The weight accorded to the § 3553(a) factors is within the district court's discretion. *See United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir.), *cert. denied*, 128 S. Ct. 671 (2007); *see also* 18 U.S.C. 3553(a)(1)-(7).

We have rejected the argument that a sentence within the guidelines is *per se* reasonable. *Talley*, 431 F.3d at 787.  Nonetheless, "there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." *Id.* at 788. When considering whether a defendant's sentence is reasonable, we have compared the sentence actually imposed to the statutory maximum. *See Winingear*, 422 F.3d at 1246.

There was no procedural error because the district court properly considered the § 3553(a) factors and Robert's arguments. The court explicitly stated it considered the § 3553(a) factors and noted which factors it was considering in

12

rendering the sentence. The court also acknowledged and considered Robert's arguments for a downward variance. For these reasons, the court did not err and did not fail to consider the § 3553(a) factors or Robert's arguments.

Robert has also failed to meet his burden of establishing the district court abused its discretion weighing the § 3553(a) factors and that his sentence was unreasonable. Robert's sentence was within the guidelines range, which we will ordinarily consider reasonable. The court properly considered Robert's arguments for a downward variance and the statutory factors, and reasonably found the amount of the fraud and its impact on the victims warranted a top of the guidelines sentence. Robert has not provided any compelling argument that the court abused its discretion weighing the sentencing factors in the case. Finally, Robert's 135-month sentence is well below the twenty-year maximum sentence his brother Gary received for the same crime. For the foregoing reasons, Robert has failed to meet his burden of establishing his within-guidelines sentence was unreasonable.

## V. CONCLUSION

Based upon the foregoing and our review of the record and the parties' briefs, we affirm the convictions and sentences of Gary Parker and Robert Parker.

**AFFIRMED.**

13